## Flanagan's Estate

C. W. *Sypniewski*, for appellants.

*Louis Rosenberg* and *Francis P. Anton*, for Commonwealth.

TRIMBLE, P. J., August 2, 1938.—The Commonwealth of Pennsylvania claims a transfer inheritance tax under the Act of July 14, 1936, P. L. 44, upon the appraisement of the interests in personalty and realty of a joint tenant, now deceased. A joint deposit account amounting to $758.21 was created on June 30, 1934, by decedent, Anna L. Flanagan, and Katherine G. Flanagan, the survivor, and a joint interest in real estate valued at $11,600 on November 1, 1935, by deed to Anna L. Flanagan, decedent, Winifred H. Flanagan, Katherine G. Flanagan, and Jane F. McConnell. The surviving joint tenants, the resident owners of the property assessed, have taken an appeal from the appraisement within 30 days to the orphans' court and have given security as the statute required. They have specified their objections to the appraisement. Under the statute (section 13, Act of June 20, 1919, P. L. 521, as amended by the Act of June 22, 1931, P. L. 689), we may consider these and no others.

The first objection complains of an unfair and unconscionable appraisement which was, as alleged, the full market value of a share of the personalty and realty in which decedent had only a joint interest with right of sur-

vivorship, which terminated when decedent died. This case was heard on petition and answer. No testimony to show the value was offered and at the argument the appraisement was accepted. The remaining objections are that the assessment of 10 percent on said appraisement is illegal and violates the provisions of the Federal and State Constitutions, and that the amending Act of 1936, supra, amending the Transfer Inheritance Tax Act of 1919, supra, and its several supplements and amendments thereto, violates the Federal and State Constitutions. The title of the Act of 1919 is as follows:

"An act providing for the imposition and collection of certain taxes upon the transfer of property passing from a decedent who was a resident of this Commonwealth at the time of his death, and of property within this Commonwealth of a decedent who was a nonresident of the Commonwealth at the time of his death; and making it unlawful for any corporation of this Commonwealth, or national banking association located therein, to transfer the stock of such corporation or banking association, standing in the name of any such decedent, until the tax on the transfer thereof has been paid; and providing penalties; and citing certain acts for repeal."

This title does not violate article III, sec. 3, of the State Constitution, which provides that no bill, except general appropriation bills, shall be passed containing more than one subject, which shall be clearly expressed in its title: Spangler's Estate, 281 Pa. 118.

In 1925, Leach's Estate, 282 Pa. 545, held that joint tenancies could be created by will, deed, or agreement notwithstanding the Act of March 31, 1812, 5 Sm. L. 395. In that case there was a futile attempt to collect a tax under the Act of 1919, as amended by the Act of May 4, 1921, P. L. 341, on the share of a brother, a joint tenant, passing at death to his sister, the surviving joint tenant, the court, at page 550, holding that the "one-half did not pass to her by succession from him". The Act of 1919, supra, was amended by the Act of May 16, 1929, P. L.

1795, by adding to its title "and taxing of joint estates", and to the body of the act:

"(e) Whenever any property, real or personal, is held in the joint names of two or more persons, except as tenants by the entirety, or is deposited in banks or other institutions or depositories in the joint names of two or more persons, except as husband and wife, and payable to either or the survivor upon the death of one of such persons, the right of the surviving person or persons entitled to the immediate ownership or possession and enjoyment of such property shall be deemed, prima facie, a transfer of one-half, or other proper fraction thereof, taxable under the provisions of this act, in the same manner as though this part of the property to which such transfer relates belonged to joint tenants or joint depositors as tenants in common, and had been bequeathed or devised to the surviving person or persons by such deceased joint tenant or joint depositor by will."

Under this section it was held in Haggerty's Estate, 311 Pa. 503, and Lowry's Estate, 314 Pa. 518, that there was no transfer of the interest of a joint tenant by death.

The title of the Act of 1936 is:

"An Act to further amend the title, to reënact and further amend paragraph (e) of section one, and to further amend section thirty-nine of the act, approved the twentieth day of June, one thousand nine hundred nineteen (Pamphlet Laws, five hundred twenty-one) . . . by defining as a transfer and taxing the right of survivorship in property as to which such right exists". Paragraph (e) as now amended provides:

"Whenever any property, real or personal, is held in the joint names of two or more persons, except as tenants by the entirety, or is deposited in banks or other institutions or depositories in the joint names of two or more persons, except as husband and wife, so that upon the death of one of them the survivor or survivors have a right to the immediate ownership or possession and enjoyment of the whole property, the accrual of such right

by the death of one of them shall be deemed a transfer, taxable under the provisions of this act. . . ."

The subject of the Act of 1919, supra, and its amendments, including the Act of 1936, supra, is the imposition and collection of taxes upon the transfer of property. Under the act the word "transfer" is defined. Under the Act of 1936, supra, it is further defined. This does not introduce any new subject into the act: Spangler's Estate, supra. The import of the word "transfer" as now accepted is as follows:

"The word 'transfer,' as used in this act, shall be taken to include the passing of property, or any interest therein, in possession or enjoyment, present or future, by distribution, by statute, descent, devise, bequest, grant, deed, bargain, sale, or gift": Section 45, Act of 1919.

". . . The accrual of such right by the death of one of them [a joint tenant] shall be deemed a transfer": Section 2(e), Act of 1936.

"The word 'transfer,' as it is used in this Restatement, when applied to interests in land or in a thing other than land, means the extinguishment of such interests existing in one person and the creation of such interests in another person": Restatement of Property, sec. 13(1).

In addition to these statutory and extrajudicial definitions we have the description of a transfer inheritance tax as given by Mr. Justice Stern in Tack's Estate, 325 Pa. 545, 547:

". . . the inheritance tax is not one on the *transfer* of specific property, as such term is ordinarily understood, but is of an entirely different nature.

"The right to transmit or to receive property by will or through intestacy is not a natural right but a creature of statutory grant. Students of law agree that the State has the right to declare an escheat of *all* the property of a decedent, and therefore, as the price of allowing a legatee, devisee or heir to inherit, it may appropriate to itself any portion of the property which it chooses to exact. Whether this appropriation be designated an in-

heritance tax, an estate tax, a succession tax, a death duty, or otherwise howsoever, it is not, in its essence, a tax on the decedent's property or any component part of it, or on the transaction of transferring it as in the case of a transmission of possession or title inter vivos, but an excise on the privilege of inheritance. It is really not a tax at all in the ordinary meaning of the word, but rather a distributive share of the estate which the State retains for itself. Its true nature is not changed by the fact that it is assessed and measured by the value of the property, or that it is paid by legatees and devisees in proportions allocated to their respective inheritances."

The Act of 1936, supra, operates on an interest at the death of the holder, not retroactively but prospectively. No tax is collectible upon an interest which had accrued before its passage. The contracts of the parties embraced a deposit in a bank and the ownership of real estate acquired prior to the passage of the act. In no sense can these parties claim exemption from the provisions of an act which, after its passage, operates upon future accruals, deemed to be transfers. In Tyler et al., Admrs., v. United States, 281 U. S. 497, at 504, Mr. Justice Sutherland stated:

"Thus the death of one of the parties to the tenancy became the 'generating source' of important and definite accessions to the property rights of the other."

There is nothing in the Constitution of Pennsylvania which permits statutory exemption from taxation of the interest of a joint tenant when it accrues by death to the survivor. Equality in levying taxes is required.

The objections all yield to the plain meaning of the statutes and the Constitution, the extrajudicial authorities, and the judicial interpretation of "transfers" herein cited. For treatises on this subject see Inheritance Taxation of Joint Tenancies in Pennsylvania, 11 Temple L. Q. 227, and Death Taxes on Completed Transfers Inter Vivos, 36 Mich. L. R. 1284, in which latter article in a note on page 1295 the situation in Pennsylvania is con-

sidered. From the abundance of authorities offered, it is impossible to sustain the objections and grant the exemption from the tax claimed. It follows that "transfer" as used in the taxing acts signifies the extinguishment of the interest of a joint tenant when it accrues by death to a surviving joint tenant, which accrual is a subject of taxation.

The petition for appeal from the appraisement of the taxes assessed on the transfer of the interests accruing to the surviving joint tenants will be dismissed.

TRIMBLE, P. J., September 26, 1938.—In the opinion filed there is a finding that "no testimony to show the value was offered at the argument and the appraisement was accepted." This is criticized by counsel and if his theory of the case is correct, the finding is wrong. He would not deny that the appraisement is correct if the legislature had the power to pass the act of assembly which permits the kind of appraisement made. The Act of July 14, 1936, P. L. 44, sec. 2 (e) states that:

" . . . the accrual of such right by the death of one of them shall be deemed a transfer, taxable under the provisions of this act, of a fractional portion of such property, to be determined by dividing the value of the whole property by the number of joint tenants in existence immediately preceding the death of the deceased joint tenant. Subject to the provisions of paragraph (c) of this section, the provisions of paragraph (e) shall apply regardless of when such joint estate was first created."

He contends that appraisements of joint interests defy calculation or are impracticable because when some are joint owners now and as a lesser number incidentally succeed, the survivor of all would be required to pay a tax in excess of the value and his argument assumes confiscation of an estate. He maintains that the unities of joint tenancies—interest, title, time, and possession—and the enjoyment of their ownership are indestructible except by the joint owners and, since there was no transfer of any interest, there was nothing to be appraised.

The court's theory of this power is different. We relied upon Lowry's Estate, 314 Pa. 518, 521:

"If the interpretation contended for by the Commonwealth is placed on paragraph 'e' of section 1 of the Act of 1929, that paragraph would be unconstitutional for there is nothing in the title of the act which indicates that the common law nature and incidents of property rights held under a joint tenancy, with what Blackstone terms 'the grand incident of joint estates, viz., the doctrine of survivorship,' are to be changed by that act so that upon the death of one joint tenant that tenant's property right in the estate so held is *transferred* from the decedent to the survivor. Only a transfer of property can be taxed under an avowedly property transfer tax."

The legislature, observing the suggested statutory correction for taxing joint estates not held in entireties, passed the Act of 1936. The title contains full notice of the subject matter which is plainly set forth in that part of the amended section above quoted. The appraisers are to divide "the value of the whole property by the number of joint tenants in existence immediately preceding the death of the deceased joint tenant" and that is what they did in this case.

The legislature had power to pass the act of assembly imposing the tax regardless of when the joint tenancy was created. Death gives rise to the accrual of the survivorship. It is this event and not the creation of the trust which controls: Gwinn v. Commissioner of Internal Revenue, 287 U. S. 224; Third National Bank & Trust Co. et al. v. White, etc., 45 F. (2) 911, affirmed per curiam in 287 U. S. 577.

We see nothing in Madden et al. v. Gosztonyi Savings & Trust Co., 331 Pa. 476, a case dealing with a tenancy by entireties exempt under the law from taxation, which would lead us to a conclusion holding that other joint tenancies created by contract are governed by the rule therein expressed.