## DeLuca v. DeLuca

*Mirarchi & Mirarchi,* for plaintiff,

*Bucci & Bucci,* for defendant.

GRIFFITHS, J., May 22, 1956.—Plaintiff brings this complaint in equity against his wife charging misappropriation of certain property, both real and personal, which plaintiff claims was jointly owned or otherwise should be so treated. The prayer is, in effect, for an order directing defendant to transfer the disputed property into joint ownership or, in the alternative, for an accounting to plaintiff for the proceeds.

At the hearing considerable conflicting testimony was taken involving principally the question what terms were agreed upon before the marriage as to how the parties' respective separate properties should be held after the marriage. Both parties had been married before, both their spouses having subsequently died.

From the pleadings and proofs the court makes the following

### Findings of Fact

1. The parties were married on February 14, 1953.

2. Prior to the marriage plaintiff transferred his savings account in the Philadelphia Saving Fund Society, having a balance of $1,968.97, into the joint names of himself and defendant, either to draw.

3. Prior to the marriage plaintiff was the owner of premises 1634 South Mole Street, Philadelphia, holding title in the name of a straw party, Giovannina Stratore.

4. In June, 1953, subsequent to the marriage, and pursuant to an express oral agreement between the parties, made prior to the marriage, title to premises 1634 South Mole Street was conveyed at plaintiff's

direction to defendant's son, Martin J. Rizzi, for $6,000.

5. Proceeds of the said sale were deposited in the joint savings account in the Philadelphia Saving Fund Society.

6. Several months later, on March 27, 1954, defendant purchased premises 25 North Jefferson Street, Margate City, N. J., in her individual name, paying $5,000 in cash out of the parties' saving fund account and giving a purchase money mortgage for $3,000.

7. Prior to the marriage defendant was the owner of premises 1525 Morris Street, Philadelphia, and is still the owner thereof.

8. Prior to the marriage defendant was receiving a government pension based on the war service of her first husband amounting to $48 per month, which was terminated upon her marriage to plaintiff.

9. Prior to the marriage plaintiff knew that defendant was receiving said pension and that she would lose it upon marrying him.

10. Prior to and after marriage plaintiff has been receiving social security benefits and a Navy pension originally amounting to $90 per month, later increased.

11. At various times and in various amounts defendant withdrew moneys from the balance remaining in the joint savings account in the following amounts and for the following purposes, inter alia: $750 for furniture for premises 1525 Morris Street, Philadelphia; $200 for a gas range for same premises, $50 for a rug for same premises, $200 for wedding banquet of the parties, $800 for renovating the Margate house and the balance for costs of living of the parties and of medical expenses of plaintiff.

12. On or about June 1, 1955, defendant forcibly excluded plaintiff from the use and enjoyment of

premises 25 North Jefferson Street, Margate City, N. J.

13. Plaintiff thereafter moved with his personal effects into the home of his daughter, Mrs. Anna Maniscalco, 520 Titan Street, Philadelphia, where he has since lived.

14. Plaintiff has failed to prove any enforceable agreement by defendant to convey her property, 1525 Morris Street, into joint names.

15. Defendant wrongfully appropriated to her own separate use from the parties' joint account in the Philadelphia Saving Fund Society the following amounts for use in her separate house, premises 1525 Morris Street, Philadelphia: $750 for furniture; $200 for a gas range, $50 for a rug.

16. The balance of the aforesaid account defendant properly used for the costs of the wedding banquet, $200; of renovating the Margate house, $800; of medical expenses of plaintiff and for ordinary joint living expenses approximately $1,000, which items should properly inure to the benefit of both parties.

17. Defendant in taking title to the Margate property in her name alone and in using joint funds for her exclusive use intended to and did defraud plaintiff and use the said realty and personalty exclusively for her own benefit at the expense of the rights of plaintiff.

## Discussion

Plaintiff went to a great deal of effort to prove by his own testimony and that of his children and son-in-law that he and defendant had made an oral prenuptial agreement that all the property of each of them should become the joint property of both. This in fact was done as to plaintiff's savings account, to which was shortly added the proceeds of the sale of his

house on Mole Street. This fund as so enlarged thereupon became an estate by the entirety: Leach's Estate, 282 Pa. 545 (1925); Berhalter v. Berhalter, 315 Pa. 225 (1934). Hence it could not be used for the exclusive benefit of one party without the consent of the other.

Although details are sadly lacking in the evidence, it appears in a general way, at least, that this fund was in fact largely used for the benefit of both at the time of the expenditures. The parties lived together for two and a half years after their marriage and for approximately the latter half of that period divided their time between the Morris Street and the Margate properties. According to the estimates admitted in round figures in the pleadings, $5,000 of it went into the purchase of the Margate house, $800 into refitting and furnishing it, $1,000 into furniture for defendant's own house on Morris Street, $200 into the cost of their wedding party and the balance of nearly $1,000 into medical and joint living expenses.

The last two items were, of course, for their family necessities, but the Margate house as refitted still exists, as also the Morris Street furniture, and they constitute the joint property of both parties. This is true notwithstanding title to the Margate house was taken in defendant's name alone. The evidence is conflicting as to whether or not plaintiff consented to this, but we think that is unimportant since the purchase money was the joint property of both.

This being so, the Margate house and the furniture bought with the balance in the joint bank account are subject to the use and enjoyment of both parties. If they cannot live together amicably and enjoy them together, the only alternative is to account for the property and divide the proceeds equally: Berhalter v. Berhalter, supra; Werle v. Werle, 332 Pa. 49 (1938);

Wakefield v. Wakefield, 149 Pa. Superior Ct. 9 (1942) ; Lindenfelser v. Lindenfelser, 383 Pa. 424 (1956). The question remains as to whether defendant's Morris Street property was covered by the alleged prenuptial agreement. Should it be conveyed to the parties' joint names on the ground that equity will regard as done that which ought to be done?

Plaintiff and his children testified as to a conversation that took place in the latter's presence in plaintiff's Wolf Street house between plaintiff and defendant a few days before their marriage, during which plaintiff and defendant agreed that both the bank account and the two houses should be put into their joint names. Defendant and her children related with equal certainty various conversations between the parties in both the Morris Street and Margate houses both before and after the marriage during which defendant had made clear her firm intention not to part with title to the Morris Street property but to hold it for her children, who had helped pay for it. According to these witnesses plaintiff agreed to that stipulation and to putting his own house and his bank account into joint names without being joined in the Morris Street title in consideration of defendant losing her pension in order to marry him.

We feel that defendant's case on this point is at least equally convincing with plaintiff's and therefore that plaintiff has failed to sustain his burden of proving an agreement by defendant to put her Morris Street property into joint names.

It is true that the Margate property is outside the jurisdiction of this court and we therefore have no power to act upon it directly. Nevertheless, we do have jurisdiction over defendant personally and can therefore order her to act or to refrain from acting with regard to such property: Schmaltz v. York Manu-

facturing Company, 204 Pa. 1 (1902) ; Cohn v. Weiss, 356 Pa. 78, 85-88 (1947).

Wherefore we make the following

### Conclusions of Law

1. Plaintiff is entitled to have title to premises 25 North Jefferson Street, Margate City, N. J., conveyed to himself and defendant as tenants by the entireties or in the alternative to an accounting and payment from defendant for one half the purchase price thereof plus one half the costs of renovations paid from the joint account of the parties hereto.

2. Plaintiff is entitled to one half the net income from the said premises from the date he was excluded therefrom, to wit, June 1, 1955.

3. Plaintiff is entitled to one half of the funds used by defendant to purchase furniture, a rug and a gas range for defendant's premises 1525 Morris Street, Philadelphia, over which defendant exercises exclusive ownership.

4. Plaintiff has no rights, liens or equities in premises 1525 Morris Street, Philadelphia, and defendant is the rightful, sole and exclusive owner thereof as against plaintiff.

And now, to wit, May 22, 1956, we enter the following

### Decree Nisi

1. Defendant, Jennie Rizzi DeLuca, is ordered and directed within 30 days from the date hereof to execute a deed conveying premises 25 North Jefferson Street, Margate City, N. J., to the joint names of herself and plaintiff as tenants by the entireties or, in the alternative, to account and pay to plaintiff for one half the purchase price thereof plus one half of $800, being the amount spent by her in renovating the same.

2. The said defendant is ordered and directed within the same time to account and pay to plaintiff for

one half the income from the aforesaid property less taxes, repairs and other lawful expenses from June 1, 1955, to the date of the accounting.

3. The said defendant is ordered and directed within the same time to account and pay to plaintiff for one half of the costs of the furniture, rug and gas range installed in premises 1525 Morris Street, Philadelphia, totaling $1,000, being the amount spent by her for such items.

4. It is ordered and decreed that defendant, Jennie Rizzi DeLuca, is the rightful, sole and exclusive owner of premises 1525 Morris Street, Philadelphia, as against plaintiff, Henry DeLuca, who has no rights, liens or equities therein.

5. Costs to be paid equally by plaintiff and defendant.

The prothonotary shall notify the parties hereto of the filing of this adjudication and unless exceptions are filed by either party within 20 days after such notice this decree nisi shall be entered as of course by the prothonotary as the final decree.