American Oil Company, Appellant, *v.*
Falconer et al.

Argued May 8, 1939.

Before KELLER, P. J., CUN-
NINGHAM, BALDRIGE, STADTFELD, PARKER, RHODES and
HIRT, JJ.

*Harland I. Casteel,* with him *Campbell, Wick, Houck
& Thomas,* for appellant.

*Seward H. French, Jr.,* with him *Reed, Smith, Shaw
& McClay,* for appellee.

Opinion by Parker, J., September 27, 1939:

The main question involved in this appeal is whether a bank deposit, standing in the name of three persons as joint tenants with the right of survivorship and with the right of any one of them to draw checks on the account, may be taken in whole or in part on an attachment execution issued on a judgment obtained against one of the depositors.

The plaintiff, American Oil Company, having recovered a judgment against William Falconer, issued an attachment execution and summoned the National Bank of America in Pittsburgh as garnishee. In reply to interrogatories, the bank answered that it did not have any funds of William Falconer but admitted that it had a savings account in the name of Mathilda Joy or William Falconer or Marie Falconer, as joint tenants with the right of survivorship and not as tenants in common. The issue raised by the pleadings was submitted to the court below on an agreed statement of facts, whereupon that court dissolved the attachment and entered a special verdict and later a judgment in favor of defendant and garnishee. The plaintiff has appealed. As we have indicated, there are no disputed facts and pure questions of law are involved.

We will state such of the facts as are essential to a disposition of the appeal. Mathilda Joy had certain cash funds, part of which were on deposit with the garnishee. She made inquiry of the teller of the bank as to how she could avoid an administration of her estate and "make it possible for her son and daughter to obtain the funds in case she predeceased them." The teller advised her to follow the course which she later pursued. Not only was the account opened in the names and style indicated by the answer of the garnishee, but there was a formal written agreement executed by Mrs. Joy and her two children, signed and sealed, wherein it was set forth that the parties desired to make joint deposits from time to time with the garnishee; that

the funds so deposited, as evidenced by the deposit book in which the agreement was entered, should "belong to and vest in the parties hereto [thereto] jointly at the time of the making of the deposits, and upon the death of either of them, in the survivor." Each of the three also stipulated that they irrevocably, during their joint lives, appointed the other a true and lawful agent to withdraw such monies on checks or orders drawn by one of them.

(1) The appellee first argues that Mrs. Joy, by making the deposits, did not part with her title to the funds in question so as to pass any interest in the fund to her son or daughter, whether as joint owners or otherwise. The court below erred, in our opinion, in adopting the view of the appellee. That error was due to a failure to distinguish between the incidents to a joint estate and to an estate by entireties and in not giving sufficient consideration to the facts showing how the joint estate was created. When we so examine the evidence we find that it was sufficient to sustain a joint estate either as a gift or based on a valid consideration.

The case of *Mardis v. Steen,* 293 Pa. 13, 141 A. 629, is a complete answer to the appellee's contention and rules this branch of the case. There one B. F. Mardis, using the name of B. F. Morgan, deposited money in a bank, the signature card being in the name of "B. F. Morgan or Florence M. Steen." Attached to the signature card was an agreement that the funds in the account belonged to Morgan and Steen as joint tenants with the right of survivorship, which agreement was signed by each under seal. Mr. Justice (later Chief Justice) FRAZER there pointed out that "where manual delivery is not practicable, a transfer may be made by assignment or by other writing or token which will indicate a present intention to pass right of possession to the donee," and that "the fact that the funds were at all times subject to the check of either party did not

make the transaction subject to the objection that the gift was not complete," citing *Leach's Est.*, 282 Pa. 545, 548, 128 A. 497, and *McIntosh's Est.*, 289 Pa. 509, 137 A. 661. In addition, the court distinguished *Flanagan v. Nash*, 185 Pa. 41, 39 A. 818, relied on here by the garnishee, explaining that in the Flanagan case there was no evidence of an agreement, oral or in writing, other than the mere fact of a joint deposit. The opinion concluded (p. 18) : "In the present case we have, in addition to the fact of a joint account being opened, an express agreement creating a joint tenancy, and authorizing and directing the bank to deal with the survivor 'as sole and absolute owner thereof.' The agreement is under seal, which imports a consideration: *Grady v. Sheehan*, 256 Pa. 377, 380. Whether we view the transaction as a gift or as the creation of a joint ownership based on a valid consideration, it is an agreement which, under the decisions above mentioned, the parties had a right to make, and the language used in the memorandum accompanying the deposit expresses with sufficient clarity the intention to create a joint tenancy with right of survivorship."

Our conclusion is also supported by the case of *Mader v. Stemler*, 319 Pa. 374, 179 A. 719. The opinion in that case disposed of two appeals, in one of which the evidence was held to be sufficient and in the other not to be sufficient to sustain a gift so as to create a joint tenancy in a bank account. The distinction between the two lines of cases is clearly shown again in that case. Also, see *Crist's Est.*, 106 Pa. Superior Ct. 571, 580, 162 A. 478; *Gallagher's Est.*, 109 Pa. Superior Ct. 304, 311, 167 A. 476; *Culhane's Est.*, 133 Pa. Superior Ct. 339, 2 A. 2d 567, affirmed by the Supreme Court, 334 Pa. 124, 5 A. 2d 377.

(2) May the plaintiff by attachment execution obtain satisfaction from the bank account? It may be taken from what has already been said that it is well settled in this state that personal property, and par-

ticularly bank deposits, may be the subject of a joint tenancy. At common law the doctrine of survivorship was an incident to a joint estate: 2 Blackstone Com. 183. "Since the Act of March 31, 1812, 5 Sm. L. 395, the mere fact that a joint ownership of property is created does not, as matter of law, give the survivor the entire ownership in the property; but it has been held that this legislation limited only the legal presumption which formerly followed, and placed no restriction on the freedom of the parties to provide by agreement or otherwise that the right of succession, which existed previous to the act, should apply. In other words, survivorship, as an incident of an estate held by joint tenants, is still lawful and the question is now one of intent, and no particular words are necessary except that the intent be expressed with sufficient clearness to overcome the presumption arising from the statute: *Leach's Est.*, 282 Pa. 545, 549": *Mardis v. Steen,* supra (p. 16).

Blackstone further says (p. 185) : "For joint-tenants being seised *per my et per tout,* everything that tends to narrow that interest, so that they shall not be seised throughout the whole and throughout every part, is a severance or destruction of the jointure. And therefore, if two joint-tenants agree to part their lands, and hold them in severalty, they are no longer joint-tenants: for they have now no joint-interest in the whole, but only a several interest respectively in the several parts ...... By common law all the joint-tenants might agree to make partition of the lands, but one of them could not compel the other so to do: for this being an estate originally created by the act and agreement of the parties, the law would not permit any one or more of them to destroy the united possession without a similar universal consent. But now by the statutes 31 Hen. VIII. c. 1, and 32 Hen. VIII. c. 32, joint-tenants, either of inheritances or other less estates, are compellable by writ of partition to divide their lands ...... If one joint-tenant alienes and conveys his estate to a third

person: here the joint-tenancy is severed, and turned into tenancy in common." The learned author then cites various acts upon the part of the joint tenant which will terminate the joint tenancy, summing up the situation in this phrase: "And, whenever or by whatever means the jointure ceases or is severed, the right of survivorship, or *jus accrescendi,* the same instant ceases with it."

Our Supreme Court has declared this to be the law in Pennsylvania. In the early case of *Davidson v. Heydon,* 2 Yeates 459, decided in 1798, property was conveyed to "Bernard Dougherty and Mary Kinkade, their heirs and assigns, and to the heirs and assigns of the survivor of them, forever." Dougherty being in debt conveyed all of his real estate to trustees for the payment of his debts. A judgment was entered against Dougherty, a writ of fi. fa. issued, and the lot in question was seized and taken in execution, but no final writ was issued. The trustees conveyed one moiety of the real estate in question. The questions in that case were whether a joint tenancy was conveyed by the original deed and, if so, whether it had been severed in the life of Dougherty. The court held (p. 463): "The assignment charges the legal estate and operates as a severance. The execution issued on the judgment has the same effect."

In *Simpson v. Ammons,* 1 Binney 175, it was held that a mortgage executed by two of three joint tenants acted as a severance of the joint tenancy. The late case of *Madden v. Gosztonyi S. & T. Co.,* 331 Pa. 476, 200 A. 624, recognizes the principle and also emphasizes the difference in the incidents of an estate by entireties and a joint tenancy. In that case Chief Justice KEPHART said (p. 482) : "While a tenancy by entireties resembles a common law joint tenancy in that each spouse owns the whole and therefore is entitled to enjoyment of the entirety and to survivorship, it differs in that neither one has any individual portion which can be alienated

or separated, or which can be reached by the creditors of either spouse." Also, see opinion by Judge HIRT, now a member of this court, in Erie Trust Company—Ralph Command Claim, 19 Erie County Law Journal 469; 33 C. J.—Joint Tenancy, §10; 14 Am. Jur.—Cotenancy, §14; *Gwinn v. Com. of Int. Rev.*, 287 U. S. 224, 228, 53 S. Ct. 157, 158-159; *Green v. Skinner*, 185 Cal. 435, 197 P. 60; *Hilborn v. Soale*, 44 Cal. App. 115, 185 P. 982.

It seems clear that the joint tenancy in this bank deposit is severable by the action, voluntary or involuntary, of any one of the parties. The effect of the attachment execution is to sever the joint tenancy and to make William Falconer a tenant in common with his mother and sister, and the one-third of such deposit becomes liable to answer for the judgment of the plaintiff against the son. The plaintiff is entitled to a judgment against the garnishee for such sum not exceeding the one-third of the deposit as is necessary to satisfy its judgment against William Falconer.

Judgment reversed and the record is directed to be returned to the court below that judgment may be entered for the plaintiff and against the garnishee in accordance with this opinion.